UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: LEE FORD | CASE NO. 10-14880-DWH<br>CHAPTER 7 |
| GUARANTY BANK & TRUST COMPANY | PLAINTIFF |
| VERSUS | ADV. PROC. NO. 11-1033-DWH |
| LEE FORD | DEFENDANT |

OPINION

On consideration before the court is a complaint to determine the dischargeability of a debt, as well as, to deny the debtor's discharge, filed by the plaintiff, Guaranty Bank & Trust Company, ("Guaranty Bank"), against the defendant/debtor, Lee Ford, ("Ford" or "debtor"); an answer to said complaint having been filed by Ford; on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core adversary proceeding as defined in 28 U.S.C. § 157(b)(2)(I) and (J).

II.

The complaint filed by Guaranty Bank seeks to deny the dischargeability of an indebtedness owed by Ford to Guaranty Bank pursuant to § 523(a)(2)(A) and (B) of the

Bankruptcy Code, as well as, to deny his discharge entirely pursuant to § 727(a)(2), (4), and (5) of the Bankruptcy Code. These code sections are set forth as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
. . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>> (B) use of a statement in writing–
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonable relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2).

### § 727. Discharge

(a) The court shall grant the debtor a discharge, unless–
. . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>> (A) property of the debtor, within one year before the date of the filing of the petition: or
>> (B) property of the estate, after the date of the filing of the petition;

. . . .

2

(4) the debtor knowingly and fraudulently, in or in connection with the case–
    (A) made a false oath or account;
    (B) presented or used a false claim;
    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(2), (4)-(5).

### III.

In the pretrial order, dated March 16, 2012, the parties stipulated to the following facts:

(1)     Plaintiff, Guaranty Bank & Trust ("GB&T") is a Mississippi banking corporation with its principal place of business located in Belzoni, Mississippi and is creditor of the debtor, Lee Ford, aka, Reagan Lee Ford, II, hereinafter referred to as "Defendant".

(2)     Defendant is an individual, currently residing in Ackerman, Mississippi and is the debtor in this cause.

(3)     Plaintiff loaned $350,000.00 to Defendant to December 28, 2005 and Defendant signed a Promissory Note promising to repay said loan to Plaintiff. Ex P-1.

(4)     Plaintiff made an additional loan to Defendant in the amount of $91,412.00 on October 5, 2009 and Defendant signed a Promissory Note promising to repay said loan. This loan was secured by a lien on Defendant's residence. Ex P-2

(5)     Plaintiff made a separate loan to Eyedeal Optical of Greenville, LLC in the amount of $399,054.92. Defendant signed a Promissory Note dated August 15, 2008, in his capacity as manager of Eyedeal Optical of Greenville, LLC, promising to repay said loan. Ex P-3. Defendant also signed a Continuing Guarantee, personally obligating himself to repay this loan. Ex P-4.

3

(6) The Notes attached as Exhibits "P-1" and "P-3" and other loan documents were executed by Defendant as part of a total loan package for Defendant and his company, Eyedeal Optical of Greenville, LLC and these two loans were cross-collateralized.

(7) To secure the payment of said Notes, Defendant and his LLC pledged both real and personal property to Plaintiff as collateral for the loans.

(8) Specifically, Defendant executed Commercial Security Agreements pledging all inventory, chattel paper, accounts, equipment and general intangibles of Eyedeal Optical Greenville, LLC and its predecessor business, Delta Vision, Incorporated and provided Plaintiff with an equipment list to attach to the Commercial Security Agreements. Ex P-5 and P-6

(9) Defendant defaulted on all three Notes and Plaintiff has realized on Defendant's real property and a few pieces of equipment.

(10) Defendant closed his clinic known as Eyedeal Optical of Greenville in December of 2009.

(11) Defendant removed certain pieces of equipment that were pledged as collateral to GB&T from the clinic at the time the clinic was closed.

(12) Defendant sold certain pieces of equipment that were pledged as collateral to GB&T, to third party buyer(s) without GB&T's knowledge or consent and failed to pay the proceeds to GB&T.

(13) Representations were made to GB&T that Defendant or his LLC owned all equipment that was pledged as collateral to GB&T, free and clear of liens.

(14) Certain pieces of equipment that were pledged as collateral to GB&T were repossessed from the clinic by priority lien holders and/or lessors.

(15) Plaintiff filed suit against Defendant in the Circuit Court of Washington County, Mississippi to collect the deficiency balance owed by Defendant and his company, Eyedeal Optical Greenville, LLC.

(16) Judgment was entered on July 30, 2010 by the Circuit Court of Washington County in the amount of $532,049.31 plus interest and attorneys fees.

(17) Plaintiff enrolled the judgment on the judgment rolls of Choctaw, Oktibbeha and Clay Counties in Mississippi.

(18) Plaintiff served Defendant with a Subpoena Duces Tecum and Notice of Judgment Debtor Exam set for September 28, 2010. The exam was postponed by agreement of counsel for both parties.

(19) Defendant filed bankruptcy in this cause on October 7, 2010, staying all collection efforts by Plaintiff.

In summary, the debtor acknowledged that he borrowed significant sums of money from Guaranty Bank, as well as, that the loan transactions were secured by real and personal property owned by the debtor or his business, Eyedeal Optical of Greenville, LLC ("Eyedeal Optical"). The personal property consisted of inventory, chattel paper, accounts, equipment, and general intangibles. As set forth in the stipulations, the debtor verified that representations were made to Guaranty Bank that either he or his LLC owned all of the personal property that was pledged as collateral free and clear of liens. He then admitted that certain items of the pledged inventory and equipment were repossessed by lessors who actually owned the property or by lien holders who held liens with priority over the claim of Guaranty Bank. He also admitted that he sold certain pledged items to third party buyers without Guaranty Bank's knowledge or consent, as well as, that he failed to remit the proceeds of the sales to Guaranty Bank.

Guaranty Bank filed a lawsuit against the debtor in the Circuit Court of Washington County, Mississippi, to collect the deficiency balance owed on the loan transactions, and obtained a judgment, dated July 30, 2010, in the amount of $532,049.31, plus interest and attorneys fees. This judgment has been appropriately enrolled in the official judgment rolls of several Mississippi counties.

The debtor also acknowledged that when he closed his business, he removed certain items of equipment which he still retains. He testified at trial that he had not surrendered these items to Guaranty Bank, but still is either using some of them in his current business or has them in storage.

Initially, the debtor personally executed the loan documentation with Guaranty Bank. However, after he established Eyedeal Optical of Greenville, LLC, he entered into a consolidated

5

loan agreement with the bank. The borrower was reflected as Eyedeal Optical and the loan was guaranteed by the debtor. The documentation evidencing the loan transactions was introduced into evidence by Guaranty Bank as Exhibits P-1 through P-7.

The pretrial order stipulations and the trial testimony provided clear and convincing evidence that the list of equipment and inventory that was presented by the debtor to Guaranty Bank to serve as collateral for the consolidated loan transaction was replete with misrepresentations. There were numerous items that were subject to prior liens and there were other items that were being leased. The debtor indicated that this list was prepared by his cousin who was serving as his office manager. However, the loan documents were all executed by the debtor. The court will address this list in more detail hereinbelow.

In late 2008 and into 2009, the debtor's business began to take a downturn and, as a result, he closed several optometry locations that he had opened in neighboring communities. He testified that his Greenville location experienced a burglary during this time frame, but he filed no police report. The debtor indicated that several items were taken, but he provided no inventory of these missing items to Guaranty Bank. The bank's representative, Andrew Dixon, Jr., testified that there was no insurance available to cover this loss because the debtor had allowed the coverage to be cancelled by failing to pay the insurance premiums. Not long after this occurrence, the debtor closed the Greenville location on December 11, 2009. Because the debtor's relationship with the bank had significantly deteriorated by that time, he provided little or no assistance to the bank to retrieve any of the items of inventory or equipment.

A list of the items of inventory and equipment pledged to the bank is reflected on Exhibit P-8. The exhibit is color-coded to reflect the items that were actually retrieved by Guaranty Bank after the debtor's business was closed. These items were liquidated by the bank as follows:

1. Blue Code - These items were sold and released to the debtor's father, Reagan L. Ford, for the total sum of $12,500.00.

2. Orange Code - These items were sold to 20/20 Eye World on June 17, 2010 for $11,000.00.

3. Yellow Code - These items were sold to 20/20 Eye World on January 26, 2011 for $4,940.00.

According to the testimony of Dixon, the whereabouts of the items which were not color-coded is unknown. The value of these missing items, calculated on the basis of the debtor's original estimate, is $361,000.00. The debtor, a licensed optometrist, offered no testimony to contradict this valuation.

As set forth on the exhibit, the total market value for the items was $598,455.38, and this value secured loans totaling $417,000.00. However, a substantial number of the items should never have been pledged to Guaranty Bank because they were not owned by the debtor or Eyedeal Optical. The court would again point out that the debtor stipulated in the pretrial order that representations were made to Guaranty Bank that either the debtor or Eyedeal Optical owned all of the inventory and equipment free and clear of liens.

In summary, the debtor admitted the following:

a) The debtor removed certain pieces of equipment that were pledged as collateral to Guaranty Bank from the clinic at the time the clinic was closed.
b) The debtor sold certain pieces of equipment that were pledged as collateral to third parties without Guaranty Bank's knowledge or

      consent, and failed to remit the proceeds of the sales to Guaranty Bank.

c) The debtor retained certain items which he is currently using or has in storage.

d) Certain items of equipment that were pledged as collateral to Guaranty Bank were repossessed by creditors who held a lien with priority over the lien of Guaranty Bank.

e) Certain items of the inventory and equipment were repossessed by the lessors who actually owned the items.

f) The debtor implied that certain items of equipment were missing as a result of the burglary of his Greenville location, but no specific items were identified and the burglary was not reported to the police. The debtor had allowed his insurance coverage to lapse which violated the provisions set forth in the Guaranty Bank loan documentation.

Although the debtor acknowledged each of the aforementioned events, which obviously resulted in a diminution of his inventory and equipment, he never itemized with specificity the items that he retained, the items that he sold without permission, the items that were repossessed by priority creditors, the items that were repossessed by lessors, or the items that were missing as a result of the burglary. In summary, his explanation has been far less than satisfactory as to why these assets are unavailable to meet his liabilities.

IV.

In its complaint, Guaranty Bank alleged that the debtor should be denied a discharge because of his failure to explain the loss and unavailability of the inventory and equipment pursuant to § 727(a)(5) of the Bankruptcy Code[1]. The Fifth Circuit Court of Appeals in *McBee v. Sliman*, 512 F.2d 504 (5th Cir. 1975), affirmed the denial of the debtors' discharge for their failure to adequately explain the loss of $14,000.00. The court provided the following comment:

---

[1] Hereinafter, all citations to code sections will be considered as the U.S. Bankruptcy Code unless specifically noted otherwise.

8

> By their objections, the creditors brought to the fore the petitioner's burden to explain what happened to the money. *Minella v. Phillips*, 5 Cir., 1957, 245 F.2d 687; 1A Colliers on Bankruptcy s 14.12, p. 1310 (1973 rev.) [sic]. Together the McBees testified that the $14,000-Marilyn McBee's separate property-was placed in a closet in their home for approximately two weeks. Then Hal McBee, unbeknownst to his wife, took the money and went on a junket to a Las Vegas gambling casino in an attempt to recoup enough to pay his debts. Within 24 hours he had lost all at the black jack tables and flew home with only airline ticket stubs and hotel receipts to account for the $14,000 loss. He was able to testify that the Sands was the scene of his debacle but except for the fact that the dealer had a mustache, McBee's memory of specific bets and the manner of the losses was vague. Who hit whom or with what and when was never revealed.

*Id.* at 506.

The Fifth Circuit reasoned that once the creditors established the unexplained absence of the $14,000.00, the debtors bore the burden of explaining what had happened, and the court rejected their unsubstantiated testimony.

In *First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986 (5th Cir. 1983), the Fifth Circuit again affirmed the denial of the debtor's discharge, to-wit:

> While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets. *Cf. In re Shapiro & Ornish*, 37 F.2d 403 (N.D. Tex. 1929), *aff'd* 37 F.2d 407 (5th Cir. 1930) (debtors offered vague explanations unconvincing to bankruptcy referee or reviewing courts). The three-judge bankruptcy appellate court in *Shapiro* construed the identical language of the Bankruptcy Act of 1898 that the debtor may be denied a discharge if he "has failed to explain satisfactorily any losses of assets or deficiency of assets," 11 U.S.C. § 32(c)(7):
>
>> The word "satisfactorily[,]" ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation-he believes what the bankrupts say with reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented.

9

> 37 F.2d at 406. Here, as in *Shapiro*, the debtor's explanation fails to induce such contentment. Asked to account for the disappearance of $19,586.83, Reed could only respond that he had many business and household expenses which he paid for in cash as they arose, and that he had lost an unspecified amount of cash gambling in Las Vegas. We cannot fault the bankruptcy judge's finding that this did not constitute a satisfactory explanation.

*Id.* at 992-93.

In *In re Retz*, 606 F.3d 1189 (9th Cir. 2010), the Ninth Circuit Court of Appeals described the objecting party's burden of proof under § 727(a)(5) of the Bankruptcy Code as follows:

> Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.
>
> . . . Once the creditor has made a prima facie case, the debtor must offer credible evidence regarding the disposition of the missing assets. Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court, overturned only for clear error. A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under [§] 727(a)(5).

*Id.* at 1205 (internal citations and quotation marks omitted).

In *Randall v. Atkins (In re Atkins)*, 458 B.R. 858 (Bankr. W.D. Tex. 2011), the bankruptcy court sustained the creditors' complaint under § 523(a)(4) and (6), as well as, § 727 (a)(2), (5), and (7). The court offered the following comments in regard to its ruling that the debtor's discharge should be denied pursuant to § 727(a)(5):

> Section 727(a)(5) provides in relevant part that a debtor will be denied a discharge where the debtor fails to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities. Section 727(a)(5) does not require specific allegations of fraud but does require that the Plaintiff identify

which assets have been lost. *See Nof v. Gannon*, 173 B.R. 313 (Bankr. S.D.N.Y. 1994) (denial of discharge warranted on fraudulent withholding of information).

The initial burden is on Plaintiffs to show some evidence that assets have been lost and then for the debtor to explain what happened to the assets. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984) *(per curiam)* (denial of discharge warranted for failure to explain loan of $130,000 to debtor). The burden on the debtor is to explain satisfactorily to the Court what has happened because the debtor has access to the operative facts. *Poolquip-McNeme, Inc. v. Hubbard (In re Hubbard)*, 96 B.R. 739 (Bankr. W.D. Tex. 1989).

*Id.* at 876.

*See also, Nichols v. Pena (In re Pena)*, Adversary No. 11-7003, 2012 WL 2088850 (Bankr. S.D. Tex. June 8, 2012).

The facts of this proceeding indicate that the conduct of the debtor impacted primarily, if not exclusively, the secured claim of Guaranty Bank. Therefore, the court will next examine whether the claim of Guaranty Bank should be excepted from discharge.

V.

Guaranty Bank, in the alternative, alleged that the indebtedness owed by the debtor should be excepted from discharge pursuant to the provisions of § 523(a)(2)(A) and (B) because the debtor admittedly made false representations to Guaranty Bank that the personal property pledged as collateral to secure the consolidated loan was owned free and clear of liens. These representations were obviously false because the items of inventory and equipment were either owned by other parties or were subject to liens having priority over the lien of Guaranty Bank. Other items were wrongfully converted by the debtor for sale or for his own use.

In *Recoveredge L.P. v. Pentecost (In re Pentecost)*, 44 F.3d 1284 (5th Cir. 1995), the Fifth Circuit Court of Appeals addressed the distinction between "false pretenses/false

11

representations" and "actual fraud" that are set forth in § 523(a)(2)(A). Judge Garza, writing for the court, provided the following comments which are relevant to this distinction, to-wit:

> When defining the elements of nondischargeability under § 523(a)(2)(A), we have distinguished between actual fraud on the one hand, and false pretenses and representations on the other. *See Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991); *see also 3 Collier on Bankruptcy* ¶ 523.08[4] & [5] (discussing in separate sections "false pretenses or false representations" and "actual fraud"). In order for a debtor's representation to be a "false representation or false pretense" under § 523(a)(2), it "must have been: (1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ("[T]o be a false representation or false pretense under § 523(a)(2), the 'false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts.*' " (quoting *Keeling v. Roeder (In re Roeder)*, 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986))).

*Id.* at 1292 - 93.

> "Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another-something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *3 Collier on Bankruptcy* ¶ 523.08[5], at 523-57 to 523-58 (footnote omitted). In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *In re Roeder*, 61 B.R. at 181, *quoted in In re Bercier*, 934 F.2d at 692.

*Id.* at 1293.

In the recent case of *Bandi v. Becnel (In re Bandi)*, ___ F.3d ___, 2012 WL 2106348 (5th Cir. 2012), the Fifth Circuit affirmed a decision from the United States Bankruptcy Court, Eastern District of Louisiana, which had held that debts owed by the debtors, Bandi, were non-dischargeable because they were incurred through false pretenses, false representations, or actual fraud, as contemplated by § 523(a)(2)(A). The bankruptcy court had also concluded that "a

statement respecting the debtor's financial condition" must pertain to the overall financial condition of the debtor, and that a statement about the status of specific assets was not "a statement respecting the debtor's or an insider's financial condition." *Id.* at *1. In effect, the bankruptcy court had determined that § 523(a)(2)(B) was inapplicable to the proceeding.

Judge Owen, writing for the Fifth Circuit, explained the court's reasoning:

> Some debts for value obtained by means of a fraudulent statement are dischargeable under § 523(a)(2), and others are not. Debt for property or other value obtained by fraud is broadly rendered nondischargeable by § 523(a)(2)(A), but that subsection carves out certain debt that follows a transfer of value or extension of credit obtained by "a statement" regarding the debtor's "financial condition" and makes that debt dischargeable. However, certain other debt that follows a transfer of value of extension of credit obtained by "a statement" regarding the debtor's "financial condition" is rendered nondischargeable by § 523(a)(2)(B). Under this subsection, if a statement respecting the debtor's or an insider's financial condition is in writing, materially false, reasonably relied upon by the creditor, and the debtor made the statement with intent to deceive, the debt obtained by the fraud is not discharged.
>
> . . . .
>
> ...The Supreme Court has described these two subsections as "two close statutory companions barring discharge," the first of which pertains to fraud "not going to financial condition" and the second of which pertains to "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied."

*Id.* at *2.

In the proceeding before this court, the debtor provided a list of assets and their respective values to Guaranty Bank in order to collateralize, in part, the loan transaction. Although the debtor indicated that his cousin had actually prepared the list, he executed the document and obviously knew what items had been included thereon. As set forth in the pre-trial order

13

stipulations, the debtor admitted that Guaranty Bank had been advised that these items of personal property were owned free and clear of liens. Since the list was not particularly voluminous, the court is compelled to conclude that the debtor was well aware that many of the items were owned by other parties or were subject to prior liens. It therefore follows that the debtor intended to deceive Guaranty Bank when this list was submitted to substantiate the loan's security.

In keeping with the instructions of the *Bandi* decision, the court concludes that § 523(a)(2)(A) appropriately applies to this proceeding and mandates that the portion of the debt owed to Guaranty Bank, which is equivalent to the value of the missing items of personal property, must be excepted from discharge in the debtor's bankruptcy case.

The value of the inventory and equipment that was not accounted for by the debtor was $361,000.00. This amount was taken from the debtor's specific valuations that were reflected on the list that he provided to the bank when the loan was obtained. Guaranty Bank indicated that it relied upon the debtor's representations in extending the loan, and the bank has been clearly damaged because these representations were false. In the opinion of the court, excepting from discharge that portion of the bank's debt that is represented by the missing items of collateral is more appropriate than completely denying the debtor's discharge. To the court's understanding, no other creditors were injured by the debtor's conduct.

In addition, the court will award Guaranty Bank its reasonable attorney fees and expenses that it incurred in prosecuting this adversary proceeding. Counsel for Guaranty Bank shall present an itemization of these fees and expenses to the court and counsel for the debtor within 30 days from the entry of this opinion. Counsel for the debtor shall be afforded a period of 15

days thereafter to object to the reasonableness of the request. Thereafter, the court shall finalize the award.

A judgment of nondischargeability pursuant to § 523(a)(2)(A) in the sum of $361,000, representing the value of the missing personal property, plus the award of attorney fees and expenses, shall be entered by the court in favor of Guaranty Bank consistent with this opinion. Interest shall accrue thereon from the date of the entry of said judgment at the highest rate permitted by state law.

This the 23rd day of July, 2012.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE